STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-159
PAF -YOR- 10/31/2013

DEBRAH L. FLUCKIGER, GREGG
FLUCKIGER and JEAN ROY,
KELLY S. ROY and JASON E.
WHEELER, KAREN M. WHEELER
f/k/a KAREN M GAGNON,

Plaintiffs

v.                                                          ORDER

FRED BAYLEY, KATHLEEN
BAYLEY, and JULIE BAYLEY and
SHAWN CAHILL,

Defendants

I.    Background

In 2001, Richard C. Sawtelle divided Lot 7 on Swan Pond in Lyman, ME into the
Sawtelle Acres Subdivision. (Def. Supp. S.M.F. ¶ 1.) Sawtelle divided the lot into six,
Lots 7A-7F. Id. and recorded a plan of the division at the York County Registry of
Deeds. *See* Plan Book 263, Page 22. Lot 7A borders on South Waterboro Road. Lots 7B,
7C, 7D, and 7E are back lots and do not have road frontage. (Def. Supp. SMF ¶¶ 8,9.)
Access to Lots 7C, 7D, and 7E is provided by an easement named "Verna Lane", which
runs through Lots 7A, 7C and 7D. (Def. Supp. SMF ¶¶ 8, 9.) Lots 7B and 7F do not have
frontage to Verna Lane. Id.

Additionally, Lots 7A, 7C, 7D, and 7E were all deeded access to the beach on
Swan Pond along with access to a nearby fireplace and picnic area. (Def. Supp. S.M.F. ¶
16.) The exact locations of these spots were not defined, and are currently disputed.

(Def. Supp. S.M.F. ¶¶ 17-20; Pl. Opp. S.M.F. ¶¶ 17-20.) The deeds permit access to Swan Pond by way of a woods road and paths. (Def. Supp. S.M.F. ¶ 23.) Instead of using Woods Road, the owners of Lots 7A, 7C, 7D, and 7E cross over Lot 7E, and possibly part of Lot 7F, in order to reach the beach and picnic areas. (Def. Supp. S.M.F. ¶24; Pl. Opp. S.M.F. ¶ 24.)

The deeds create restrictions on the use of the beach, fireplace, and picnic area and reserve to the grantor the right to post new rules in the picnic area. (Def. Supp. S.M.F. ¶ 16.) Sawtelle posted rules for the beach, fireplace, and picnic areas at the time of the creation of the subdivision. (Def. Supp. S.M.F. ¶ 32.) The rules written and posted by Sawtelle have since been removed and replaced with new rules. (Def. Supp. S.M.F. ¶ 33.) On January 11, 2013, Julie Bayley conveyed to Fred Bayley a corrective deed including the right to post restrictions and conditions on the use to the beach and picnic areas. (Def. Supp. S.M.F. ¶ 37.) This right had been inadvertently conveyed to Julie Bayley by the Estate of Richard C. Sawtelle on March 30, 2007. Id.

Defendant Fred Bayley intends to construct a home on Lot 7F. (Def. Supp. S.M.F. ¶ 14.) In order to access the proposed structure, Defendant Fred Bayley has extended Ryan's Lane, a fire access road that runs from South Waterboro Road through Lots 7A and 7B, near the boundary line of Lot 7E. Defendant Fred Bayley erected a silt fence two to three feet tall for the purpose of the construction of the road. (Def. Supp. S.M.F. ¶ 26.) The road extension displaced the previous fireplace. This court ordered the rebuilding of the fireplace at the spot of defendants' choice. (Order on Pl's Consolidated Motion for Ex Parte T.R.O. (June 29, 2012).)

Plaintiffs include Jean and Kelly Roy, who are the owners of Lot 7C; Jason Wheeler and Karen Wheeler, who are the owners of Lot 7D; and Deborah and Gregg Fluckiger, who are the owners of Lot 7E. They have brought a nine-count complaint

2

against Julie Bayley who owns Lot 7A; Julie Bayley and Shawn Cahill, who owned Lot 7B; and Fred and Kathleen Bayley, who own Lot 7F. Ms. Bayley and Mr. Cahill are now divorced and it has been represented that he has no remaining interest in Lot 7B or this dispute. In Count I, Plaintiffs seek a declaratory judgment from the court concerning their right to use the beach, fireplace, and picnic area. Count II is an action for declaratory judgment as to the reasonableness of the most recent rules. Count III is a claim for injunctive relief to enjoin Defendants from interfering with Plaintiffs' use of the beach and picnic area. Counts IV and VI seek declaratory judgment that Lots 7B and 7F do not have a right to access Verna Lane. Counts V and VII seek injunctive relief to enjoin the use of Verna Lane by the owners of Lots 7B and 7F. Count VIII seeks declaratory judgment of Plaintiffs' rights to use Woods Road and pass over Lot 7F to reach Swan Pond. Finally, Count IX seeks injunctive relief enjoining Defendants from interfering with Plaintiffs' usage of Woods Road and passing over Lot 7F to reach Swan Pond. The counts have been renumbered to reflect a clerical error in the complaint. The Defendants have filed a counterclaim seeking a declaratory judgment. Defendants have moved for summary judgment on all counts. Plaintiffs have filed a cross motion for partial summary judgment moving the court to find in their favor on Counts II, IV, V, VI and VII.

## II. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Beal v. Allstate Ins. Co., 2010 Me 20, ¶ 11, 989 A. 2d 733; Dyer v. Dept. of Transp., 2008 ME 106, ¶ 14; 951 A.2d 821. When reviewing a motion for summary judgment, the court reviews the parties' statements of material facts and the cited record evidence in the light most favorable to the non-moving party. Dyer, 2008 ME 106, ¶ 14.

3

A genuine issue of material fact exists where the fact finder must make a determination between differing versions of the truth. Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp., 2005 ME 29, ¶7, 868 A.2d 220, (citing Univ. of Me. Found. V. Fleet Bank of Me., 2003 ME 20, ¶20, 817 A.2d 871). "[A] fact is material if it could potentially affect the outcome of the case." Reliance Nat'l Indem., 2005 ME 29, ¶7.

## III. Discussion

### A. Count I and Count III: Declaratory Judgment and Injunctive Relief–Use of Beach, Fireplace, and Picnic Area

Plaintiffs have brought a claim asking the court to declare their rights to use the beach, fireplace, and picnic area on Lot 7F. "The scope of an interest in land conveyed by deed is determined solely from the language of the deed, if that language is unambiguous." Rancourt v. Town of Glenburn, 635 A.2d 964, 965 (Me. 1993). The language included in the deeds to Lots 7A, 7C, 7D, and 7E is as follows:

> This conveyance also includes the right to use the beach on Swan Pond and the adjoining picnic area with a fireplace to be located thereon. This easement is limited to the beach and the cove on said pond (and the adjoining picnic area) and includes access to and from said beach and picnic area over the driveway on land of grantor herein, leading from Frost Road, and over a woods road and path, which connect with said driveway. This easement is for the benefit of the grantees herein, their heirs and assigns in common with the grantor herein, his heirs and assigns, members of the grantor's family and with the owners of the other lots designated on the Plan of Sawtelle Acres (also see Plan recorded in said Registry of Deeds at Plan Book 254).
>
> The following conditions and restrictions apply to the use of the beach and picnic areas:
>
> No alcoholic beverages of any kind are to be used at any time on the beach or picnic areas.
>
> Other conditions and restrictions as to fires, boating, curfew and the like will be posted from time to time by the grantor herein at the picnic area.
>
> Violation of any of these conditions and restrictions will result in either permanent or limited termination by the grantor of the right to use of the beach and picnic areas.

4

(Def. Supp. S.M.F. ¶16).[1] The deed language grants use of the "beach on Swan Pond and the adjoining picnic area with a fireplace to be located thereon." The court recognizes this interest as an easement.

The parties dispute whether the easement is in gross or appurtenant to Lots 7A, 7C, 7D and 7E. An easement appurtenant is created to benefit the dominant estate and runs with the land. Stickney v. City of Saco, 2001 ME 69, ¶ 31, 770 A.2d 592. An easement in gross is not an interest pursuant to ownership of another estate in land, "but is a mere interest in or right to use the land of another." Id. at ¶ 32. An easement in gross is generally not assignable and will terminate on the death of the individual for whom it was created.[2] Id. Maine law requires that, whenever possible, an easement be construed as appurtenant to the land of the person for whose use the easement was created. Id. at ¶ 33.

In the current case, the deeds include language of conveyance referring to the easement being intended to benefit the grantees and their heirs and assigns. Additionally, they refer to the other lot owners in the subdivision. A strict reading of the instrument suggests that the easement was intended for lot owners of the subdivision in perpetuity subject to the restrictions described therein. The deed can fairly be construed to grant an easement appurtenant. Therefore, the court must

---

[1]     The deeds conveyed to the Wheelers, the Fluckigers, and the Roys are very similar. The language concerning use of the beach and picnic is different in the following ways: the Fluckigers' deed states that the easement is also for the benefit of the "owners of the other lots designated on the Plan of Sawtelle Acres." (Pl. Opp. S.M.F. ¶ 16.) The Roys' deed provides for "access to and from said beach and picnic area over the driveway now or formerly of Richard C. Sawtelle." Id. The Roys' deed also states that the easement is meant for the benefit of the grantees, Richard Sawtelle, his heirs and assigns, and the other lot owners in the subdivision. Id. Finally, the Roys' deed includes a variation on the language concerning restrictions on the property. The Roys' deed includes: "Other conditions as to fires, boating, curfew and the like will be posted from time to time at the picnic area. Violations of any of these conditions and restrictions will result in either permanent or limited termination by Richard C. Sawtelle of the right to use of the beach and picnic area." Id.

[2]     An easement in gross may be assignable when the parties clearly intend the easement to be assignable. O'Donovan v. McIntosh, 1999 ME 71, ¶ 10, 728 A.2d 681.

5

construe the deed in that fashion. See ALC Dev. Corp. v. Walker, 2002 ME 11, ¶ 14, 787 A.2d 770.

The parties dispute the boundaries of the easement and the exact location of the beach, fireplace, and picnic area referred to in the deed. "In the face of imprecision in a grant, the same types of extrinsic evidence that can be considered for the *use* of an easement are applicable to determine its *location.*" Anchors v. Manter, 1998 ME 152, ¶ 20, 714 A.2d 134 (emphasis in the original). The court must "ascertain the objectively manifested intention of the parties in light of circumstances in existence recently prior to the conveyance, such as the relation of the parties, the nature and situation of the dominant and servient property, and the apparent purpose behind the grant." Guild v. Hinman, 1997 ME 120, ¶ 7, 695 A.2d 1190, (citations omitted). Where the beach, fireplace, and picnic area were intended to be prior to and at the time of the 2001 conveyance is a question of fact. Because the scope of Plaintiffs' interests in the beach, fireplace, and picnic area depends upon defining the location of those areas, and the determinations of those locations are questions of fact, this determination of interests is inappropriate for summary judgment.

Plaintiffs argue that they have a right to access the beach, fireplace, and picnic area over a path through Lot 7E on the basis that the Fluckigers, the owners of Lot 7E, granted Plaintiffs permission to cross over their lot. The Fluckigers may grant whomever they choose permission to cross over Lot 7E. The Fluckigers do not have the authority to independently grant access over Lot 7F, owned by Fred and Kathleen Bayley. Whether Plaintiffs only need to cross Lot 7E in order to reach the beach, fireplace, and picnic areas depends on the determinations the locations of those areas.

6

The court denies summary judgment on the issue of whether Plaintiffs have a right of access to the beach, fireplace, and picnic area over Lot 7E.[3]

Plaintiffs brought an action for injunctive relief asking the court to enjoin Defendants from interfering with use of their easement to the beach and picnic area. Again, the exact locations of the beach and picnic areas are questions of fact. The court must first determine the location of the easement before making a determination as to whether Defendants have interfered with Plaintiffs' rights or obstructed Plaintiffs' use of the easement. Summary judgment is denied on Count III.[4]

## B. Count II: Declaratory Judgment – Posted Rules

The parties have filed cross motions for summary judgment on Plaintiffs' Count II asking the court to declare the rules posted by Defendants unreasonable and unenforceable. The issues before the court are whether Defendants had authority to post and enforce the rules and whether the rules were reasonable.

The language of the deeds set certain restrictions and permit the posting of further restrictions by the "grantor". Plaintiffs argue that a strict interpretation of the language of the deed allows only the original grantor, Sawtelle, to post new conditions or restrictions. Plaintiffs allege that because the deeds use the language of succession to grant access to the beach, fireplace, and picnic areas to the successors in interest of the property, and fail to use language of succession in describing the ability to post

---

[3]     Plaintiffs allege that in 2001, when Lot 7 was divided, Sawtelle intended for the owners of Lots 7C, 7D and 7E to pass over Lots 7E and 7F in order to reach the beach and picnic area. As evidence they cite to language in the Roys' deed granting access to the beach and picnic area over Sawtelle's driveway. (Pl. Opp. S.M.F. ¶ 16.) Plaintiffs' cited evidence is insufficient to prove as a matter of law that Mr. Sawtelle intended for the owners of Lots 7C, 7D, and 7E to have an access easement other than that explicitly stated in the deeds.

[4]     Defendant cites to the Department of Environmental Protection issued permit as proof that Defendants are not interfering with Plaintiffs easement rights. (Supp. S.M.F. ¶ 25.) The purpose of DEP site plan review is to ensure that projects that may have a substantial effect on the environment are not harmful. Department of Environmental Protection (2013) http://www.maine.gov/dep/about/index.html. The issuance of a permit by the DEP is not evidence of exclusive rights to use of land.

restrictions and conditions on the use of the beach and picnic area, Sawtelle did not intend for the right to run with the land. Defendants argue that the ability to post restrictions runs with the land and is now held by Fred and Kathleen Bayley.

There is no evidence presented to the court that Sawtelle intended the ability to post and enforce new rules to run with the land. The deed conveyed by Sawtelle to the Roys has a variation on the phrasing of the continued right to post restrictions. It states "Other conditions as to fires, boating, curfew and the like will be posted from time to time at the picnic area. Violations of any of these conditions and restrictions will result in either permanent or limited termination by Richard C. Sawtelle of the right to use the beach and picnic area." (Pl. Opp. S.M.F. ¶ 16.) Sawtelle reserved the right to enforce the rules to himself. The court interprets the language of the reserved right to post new rules as similarly reserving the right to Sawtelle alone. See Rancourt, 635 A.2d at 965 (Me. 1993). Summary judgment is granted to Plaintiffs. [5]

Because the court finds that Defendants do not have the authority to post rules, the court does not reach the issue of whether the rules themselves are reasonable.

## C. Count IV and Count VI – Declaratory Relief –Verna Lane

The Plaintiffs have requested that the court declare that Lots 7B and 7F have no right of access over Verna Lane. Defendants move for summary judgment on the basis that there is no justiciable controversy. "For a case to be ripe there must be a 'genuine controversy' and a 'concrete, certain, and immediate legal problem.'" Marquis v. Town of Kennebunk, 2011 ME 128, ¶ 18, 36 A.3d 861 (citing Johnson v. City of Augusta, 2006 ME 92, ¶ 7, 902 A.2d 855).

---

[5] Furthermore, if the court were to determine that Defendants had the authority to post rules, that authority would be held by Defendants Fred and Kathleen Bayley because of their status as successors in interest to Sawtelle and because of the corrective deed executed on January 11, 2013. Defendant Fred Bayley has stated that he did not write or post the new rules. (Pl. Opp. S.M.F. ¶ 35.)

8

> Property, although subject to an easement, remains within the ownership and control of the owner of the servient estate. That ownership and control is subject only to the restriction that the owner of the servient estate not "materially impair" or "unreasonably interfere with" the use of the right-of-way that is allowed by the easement. This principle is further limited to application only within the bounds of the easement. The owner of the servient estate "has the right to use its land in a manner not inconsistent with the dominant estate holder's right."

Flaherty v. Muther, 2013 ME 39, ¶ 21, 65 A.3d 1209 (citations omitted). Easement holders do not hold the right to exclude others.

Verna Lane crosses over Lot 7A. Defendant Julie Bayley owns Lot 7A. Defendant Julie Bayley has the right to use her property, including Verna Lane, as long as the use does not materially impair the easement rights of Lots 7C, 7D, and 7E.[6] Defendant Julie Bayley has granted permission to the owners of her other parcel, Lot 7B, and to the owners of Lot 7F to use Verna Lane. Allowing two additional parcels to use Verna Lane does not materially impair the easement rights of the dominant estates. There is no current controversy. The issue is not ripe. Summary judgment is granted for Defendants on the issue of Declaratory Judgment of access to Verna Lane by Lots 7B and 7F.

### D. Counts V and VII – Injunctive Relief - Use of Verna Lane by Lot Owners of 7B and 7F

Plaintiffs have sought injunctive relief concerning the use of Verna Lane by the owners of Lots 7B and 7F. Defendants move for summary judgment on this claim arguing that Plaintiffs have not alleged sufficient harm to meet the burden for obtaining injunctive relief. Plaintiffs have filed a cross motion for summary judgment on the claim. Injunctive relief is awarded where Plaintiffs have shown:

> (1) that plaintiff will suffer irreparable injury if the injunction is not granted, (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant, (3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility),

---

[6]     The deeds conveyed to the Wheelers, the Fluckigers, and the Roys all include Lots 7A and 7B in the grant of the easement over Verna Lane. The deeds conveyed to the Wheelers and the Roys both include Lot 7E as well. (Pl. Opp. S.M.F. ¶8.)

(4) that the public interest will not be adversely affected by granting the injunction.

Ingraham v. Univ. of Maine at Orono, 441 A.2d 691, 693 (Me. 1982).

Plaintiffs argue that the use of Verna Lane by Lots 7B and 7F has increased traffic, eroding their easement interests. Furthermore, Plaintiffs argue that the placement of trees and boulders on the side of the road at the intersection of the new road and Verna Lane interferes with their easement rights. (Pl. Opp. S.M.F. ¶ 15.) The Law Court has found that a small increase in traffic over an easement does not amount to interference with the use of an easement. Gutcheon v. Becton, 585 A.2d 818, 822 (Me. 1991) ("It is well settled that a mere increase in the volume of traffic across the access road will not constitute a *per se* overburdening.") Plaintiffs' allegations of increased traffic do not at the proposed level rise to the level of overburdening.

As mentioned in the discussion of Counts IV and VI, "The owner of the servient estate 'has the right to use its land in a manner not inconsistent with the dominant estate holder's right.'" Flaherty v. Muther, 2013 ME 39, ¶ 21, 65 A.3d 1209, (citations omitted). There has been no evidence presented that the trees and boulders placed by the side of Verna Lane are inconsistent with the rights of the dominant estate holders to access the easement. Plaintiffs have not been impeded in using the full easement, nor have they been unable to access their properties by way of Verna Lane. Plaintiffs have not suffered irreparable injury as a result of the use of Verna Lane by the owners of Lots 7B and 7F or the placement of boulders by the side of Verna Lane. Summary Judgment is granted to Defendant with respect to Plaintiffs claim of injunctive relief for the use of Verna Lane by Lots 7B and 7F.

10

### E. Counts VIII and IX – Declaratory and Injunctive Relief on "Woods Road and Path"

Plaintiffs have brought claims for declaratory and injunctive relief to define and enforce their easement over Woods Road also referred to as a woods road and path to Swan Pond. Woods Road appears to end significantly short of Swan Pond. (Pl. Add. S.M.F. ¶¶ 92,93.) Plaintiffs ask the court to define the path of their easement to the water and to declare Defendants in violation of the easement. Defendants move for summary judgment on the basis that they claim Defendants have never interfered with Plaintiffs' easement. (Def. Supp. S.M.F. ¶ 30.)

The location of the path of Plaintiffs' easement from the Woods Road to Swan Pond is a question of material fact. The court is not able to make a determination on whether the easement has been honored without first determining the location of the easement. Summary Judgment is denied as to both Counts VIII and IX.

### IV.  Conclusion

The court grants summary judgment to Defendants on Counts IV, VI, V and VII.

The court grants summary judgment to Plaintiffs on Count II.

The court denies summary judgment on Counts I, III, VIII and IX.

Judgment for the Plaintiffs on the counterclaim.

Dated:  October 31, 2013

Paul A. Fritzsche
Justice, Superior Court

11

ATTORNEYS FOR PLAINTIFF:
THOMAS AINSWORTH
JOHN TURCOTTE
AINSWORTH THELIN & RAFTICE PA
PO BOX 2412
SOUTH PORTLAND ME  04116


ATTORNEY FOR DEFENDANT:
GENE LIBBY
LIBBY O'BRIEN KINGSLEY & CHAMPION LLC
62 PORTLAND RD UNIT 17
KENNEBUNK ME  04043